```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

COREY L. KING,                  :
        Petitioner,              :
                                 :    Crim. No. 3:99CR67 (AHN)
v.                               :    Civ. No. 3:03CV147 (AHN)
                                 :
UNITED STATES OF AMERICA,        :
        Respondent.              :
```

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

Petitioner Corey L. King ("King") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255 requesting that his June 21, 2000, conviction be vacated, set aside, and/or corrected. King pleaded guilty to conspiracy to possess with intent to distribute and to distribute cocaine base in violation of Title 21 U.S.C. §§ 841 & 846. He was sentenced to 120-months imprisonment and 5-years supervised release. He now challenges his sentence on several grounds. For the reasons that follow, his petitions [dkt. # 309, 319, 321, 323, 330] are denied.

### BACKGROUND

King was a member of a narcotics trafficking organization that distributed crack cocaine in Bridgeport, Connecticut. On April 8, 1999, he was indicted for narcotics violations. On August 26, 1999, he pleaded guilty to "count one of the Superceding Indictment, which charge[d] him with conspiracy to possess with intent to distribute and to distribute cocaine base

in violation of Title 21 U.S.C. § 841." Pursuant to the plea agreement, King acknowledged that he "knowingly and willfully became a member of . . . a conspiracy between two or more persons to possess with intent to distribute and to distribute cocaine base . . ." As detailed in the plea agreement, "the narcotics conspiracy and applicable relevant conduct involved the distribution of over 50 grams of cocaine base . . . [which] carries a maximum penalty of life imprisonment, a $4,000,000 fine, and a mandatory minimum penalty of 10 years imprisonment."

At sentencing, held on June 20, 2000, the court adopted the presentence report ("PSR"), and found that King had a total offense level of 40, a criminal history category of I, and a guidelines range of 292 to 365 months imprisonment. As detailed in the PSR, the sentencing calculation was based on an offense level of 38, as well as a two-point enhancement for possession of a firearm, a three-point enhancement for holding a managerial role in the offense, and a three-point reduction for acceptance of responsibility. Based on the government's § 5K1.1 motion for King's substantial assistance, the court departed downward from the applicable guidelines range and sentenced King to 120-months imprisonment -- the mandatory minimum stipulated in the plea agreement -- and 5 years supervised release.

On November 9, 2001, the Second Circuit affirmed King's conviction and sentence. King timely filed the instant habeas

petition on January 21, 2003.

## DISCUSSION

King now seeks collateral relief pursuant to § 2255 on the grounds that: (1) he received ineffective assistance of trial counsel; (2) the government breached the terms of the plea agreement; (3) the government acted in bad faith by not filing a Rule 35(b) motion; and (4) his sentence violates the rule in Blakely v. Washington, 542 U.S. 296 (2004). The government submits that the court should deny King's petition because it is without merit. The court agrees.

I.   Ineffective Assistance of Counsel

King claims that he is entitled to habeas relief because he did not receive effective assistance of counsel. In particular, he submits that trial counsel was deficient for not objecting to (1) the two-point enhancement for possession of a firearm; (2) the three-point enhancement for holding a managerial role in the offense; and (3) the government's alleged use of privileged information at sentencing. King's ineffective assistance claim fails on all three grounds.

A defendant seeking to attack a sentence based upon ineffective assistance of counsel must: (a) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and (b) "affirmatively prove prejudice" by demonstrating "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-89, 693-94 (1984).  In this case, King fails to make the two-part showing.

Even if the court were to assume that counsel's performance was deficient, King does not also demonstrate the requisite prejudice.  In particular, he fails to establish that there was a reasonable probability that, if counsel had objected at sentencing, the court would not have imposed the enhancements for possession of a firearm and managerial role.  Under pre-existing sentencing law, a district judge was "largely unlimited" as to the kind of information he could consider at sentencing.  <u>See</u> <u>United States v. Salemi</u>, 46 F.3d 207, 210 (2d Cir. 1995) (quoting <u>United States v. Pugliese</u>, 805 F.2d 1117, 1122 (2d Cir. 1986)). Here, as the government points out, the court imposed the enhancements on the basis of testimony in related trials and cooperating-witness statements that detailed King's managerial role in the conspiracy and his possession of firearms.  In the face of such strong evidence, it is unlikely that the court would not have imposed the enhancements even if counsel had objected to them.  Without more, King cannot now show that he suffered prejudice as a result of counsel's failure to object because in all likelihood the court would have imposed the enhancements just the same.  His ineffective assistance of counsel claim is

therefore denied on these bases.

Equally unavailing is King's claim that he received ineffective assistance because counsel failed to object to the government's alleged use of privileged, proffer-session evidence. Even if the court assumes that the government did use such evidence -- though that fact is not clear from the record -- and that counsel did not object to it, King's ineffective assistance claim still fails because, contrary to his assertions, he has not established that he was prejudiced as a result.  That is, merely because King received sentencing enhancements for possessing a firearm and having a managerial role in the conspiracy does not mean, without more, that his privileged statements were the basis for the enhancements.  Contrary to King's assertions, the record demonstrates that the court imposed the enhancements based on independent trial testimony and cooperating-witness statements detailing King's involvement in the conspiracy. See Salemi, 46 F.3d at 210 (granting sentencing judge broad discretion as to the type of evidence that may be considered at sentencing under pre-existing regime).  There is nothing in the record to show that the court relied on privileged information.  King's ineffective assistance claim is therefore denied on this basis as well.

II.   Breach of Plea Agreement

Next, King claims that he is entitled to habeas relief because the government violated the terms of the cooperation

5

agreement by using privileged information at sentencing.  Under § 1B1.8 of the Sentencing Guidelines, when "a defendant agrees to cooperate with the government by providing information . . . and . . . the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement."  U.S.S.G. § 1B1.8.

There is no merit to King's claim.  The proffer agreement that he entered into with the government states that "[King's] statements and information . . . must be brought to the attention of the district court at the time of sentencing in the pending federal criminal case against [him] . . . [but that] such statements and information may not be considered by the district court in determining [his] applicable sentencing guideline range . . ."  Even if it is assumed that, at sentencing, the government disclosed privileged information that King provided pursuant to a cooperation agreement with the government, that does not mean that the government violated § 1B1.8.  Under the terms of the proffer agreement, the government was permitted to disclose such information.  In other words, because the agreement stipulated that the government would disclose King's self-incriminating evidence to the court at sentencing, but that the court would not use such information for sentencing purposes, the mere disclosure

of such evidence does not, without more, establish that the government violated the terms of the proffer agreement. Moreover, apart from unsubstantiated assertions, King does not submit any evidence indicating that the court used the privileged statements to calculate his offense level.  Indeed, as stated in Section I, supra, the record indicates that the court imposed the sentencing enhancements on the basis of independent evidence from trial testimony and the statements of cooperating witnesses. Accordingly, King is not entitled to habeas relief on this basis either.

III. Government's Bad Faith

King further claims that the court should grant his habeas petition because the government acted in bad faith by not filing a Rule 35(b) motion.[1]  Specifically, King submits that the government should have moved to reduce his sentence after he testified as a cooperating witness in two subsequent state criminal trials.  This claim is without merit.

When a defendant enters into a written agreement in which the government promises to move for a reduced sentence under Rule 35(b) in exchange for substantial assistance, the court "may look

---

[1] Fed. R. Crim. P. 35(b)(2)(B) provides, in pertinent, "[u]pon the government's motion . . . the court may reduce a sentence if the defendant's substantial assistance involved . . . information provided by the defendant  . . . within one year of sentencing . . ."

to see if the government has lived up to its end of the bargain . . . and . . . acted fairly and in good faith." United States v. Truesdale, 258 F. Supp.2d 296, 298 (S.D.N.Y. 2003) (citation and quotations omitted).[2]  However, where no agreement exists, the government's failure to make a motion "can be challenged only if defendant makes a substantial threshold showing of an unconstitutional motive – such as the race or religion of the defendant – or a lack of a rational relationship to a legitimate government objective."  Id. (citation and quotations omitted).

In this case, the government's failure to file a Rule 35(b) motion does not constitute bad faith even though King testified as a cooperating witness in two state criminal trials after he was sentenced.  The record indicates only that the government agreed to move for a downward departure at sentencing pursuant to § 5K1.1.  It does not provide that the government would file a Rule 35(b) motion in exchange for subsequent testimony that assisted state authorities.  Indeed, King received a substantial

---

[2] For purposes of this motion, the court relies on Truesdale even though that case deals with the government's failure to file a § 5K1.1 motion and not, as here, the failure to file a Rule 35(b) motion.  The court's reliance on Truesdale is supported by the fact that other courts have treated claims under Rule 35(b) in the same manner as claims under § 5K1.1 by virtue of the fact that "the only practical difference [between the two provisions] is a matter of timing:  The latter is based on substantial assistance before sentencing while the former is based on substantial assistance after sentencing." United States v. Gangi, 45 F.3d 28, 30 (2d Cir. 1995) (citing cases).

reduction in his sentence as a result of the § 5K1.1 motion which contemplated that he would continue to assist state officials. Because King fails to demonstrate, much less allege, that the government's refusal to file a Rule 35(b) motion to further reduce his sentence was based on either an unconstitutional motive or that it lacked a rational relationship to a legitimate government objective, his bad faith claim must fail.  See Truesdale, 258 F. Supp.2d at 298.  Accordingly, King's petition for habeas relief is denied on this basis.

IV.  Blakely

Finally, King claims that his sentence violates the rule in Blakely because the court imposed sentencing enhancements based on facts that were not found by a jury.  The court construes his claim as one under Booker v. United States, 125 S.Ct. 738 (2005), which, even though not dictated by Apprendi or Blakely, see Guzman v. United States, 404 F.3d 139, 142 (2d Cir. 2005), is, for all intents and purposes, the federal analog of Blakely. Even if his claim had merit, King would not be entitled to relief under Booker because his conviction became final before January 12, 2005, the date Booker was decided.  Because, under Second Circuit law, Booker is not retroactive on habeas review, see id. at 144, King's habeas petition fails on this basis as well.

CONCLUSION

For the foregoing reasons, King's petitions for a writ of habeas corpus [dkt. # 309, 319, 321, 323, 330] are DENIED. Because King fails to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  See 28 U.S.C. § 2253(a)(2).

So ordered this 27th day of September, 2005, at Bridgeport, Connecticut.

/s/
Alan H. Nevas
United States District Judge